UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60571
_____


INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, WOODWORKERS DIVISION, AFL-CIO; WOODWORKERS LOCAL LODGE W443, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO; W.R. RISER, on behalf of himself and all others similarly situated; LESTER MCCULLUM, on behalf of himself and all others similarly situated; LEWIS H. TINER, on behalf of himself and all others similarly situated; EMMETT M. NAPIER, on behalf of himself and all others similarly situated; J.C. WALDRUP, on behalf of himself and all others similarly situated; EARNEST WEEMS, JR., on behalf of himself and all others similarly situated; ROBERT J. MYERS, on behalf of himself and all others similarly situated; KING G. MCMILLAN, on behalf of himself and all others similarly situated; ALBERT JAMES PARKER, SR., on behalf of himself and all others similarly situated; JAMES W. JONES, on behalf of himself and all others similarly situated; ROBERT J. POLSON, on behalf of himself and all others similarly situated; MILFORD L. GRAHAM, on behalf of himself and all others similarly situated; J.W. LEWIS, on behalf of himself and all others similarly situated; E.U. SIMS, on behalf of himself and all others similarly situated,

Plaintiffs-Appellants,

versus

MASONITE CORPORATION, a division of International Paper Company,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Mississippi
_____
September 4, 1997

Before GARWOOD, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

In this appeal, certain retired employees of Masonite Corporation ("Masonite") challenge the district court's determination that the collective bargaining agreements ("CBAs") in effect at the time they retired did not confer vested lifetime health insurance benefits. The district court concluded that the retired employees' entitlement to health insurance benefits expired when the CBAs under which they retired did.

Because we conclude that the CBAs at issue are ambiguous, we reverse and remand for further proceedings.

I.

Before 1993, appellants, Masonite employees who retired after 1972, had received uninterrupted health insurance coverage at the company's expense at or above the level provided by the CBAs in effect at the time they retired. On May 1, 1993, however, Masonite announced unilateral changes to the health insurance benefits of its retired employees, decreasing the percentage of medical costs reimbursed from 80% to 65%, increasing the yearly deductible from $100 to $300, making some services reimbursable on a scheduled rather than an actual cost basis, and requiring pre-certification for all hospitalization. The changes apply to those employees who retired before January 16, 1993. The benefits of already-retired employees were not on the table during contract negotiations between the union and Masonite in 1992, which resulted in a new CBA effective January 16, 1993.

Masonite also announced that it might in the future require retired employees to pay premiums to maintain their health

insurance coverage.  In fact, the re-enrollment form Masonite sent to retired employees with the announced changes contained an authorization clause, which, if signed, would authorize the company to deduct medical insurance premiums from retiree pension payments, "if applicable."  Only a handful of retired employees complied.  Masonite has not terminated the benefits of any retired employees for failure to sign the authorization form, and it continues to pay the retired employees' health insurance premiums.

In response to these actions, retired Masonite employees filed this suit in federal district court under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1140.  The district court certified a plaintiff class consisting of all hourly employees of Masonite who retired between December 1, 1973, and January 15, 1993, and who, under the CBAs in effect at the time of their retirement, were eligible for the continuation of their health insurance benefits.  The class sought declaratory and injunctive relief, monetary damages, and attorneys' fees.

In the district court, the parties clashed over three aspects of the retired employees' health insurance benefits: duration, cost, and level of benefits.  The retired employees argued that their benefits were vested for each retired employee's lifetime, the cost to be borne by the company, and the level of benefits to be at least that provided in 1987.  The company argued that the retired employees' benefits were guaranteed only for the duration

3

of the CBA in effect when they retired, with no guarantee that the company would pay for those benefits, and with no minimum level of benefits ensured. The parties filed cross-motions for summary judgment based on stipulated facts and exhibits, and other summary judgment evidence. In its order granting defendant's motion for summary judgment, the district court addressed only whether the retirees' benefits were vested and concluded that any entitlement to retirement benefits expired when the relevant CBA did. Under the district court's broad holding, not only can Masonite reduce the retired employees' benefits, which it has done, it could also require retirees to contribute premiums, which it has threatened to do, and could eliminate their health insurance benefits altogether.

Plaintiffs timely filed a notice of appeal.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Gunaca v. State of Texas*, 65 F.3d 467, 469 (5th Cir. 1995). Likewise, the district court's interpretation of a contract is subject to *de novo* review. *L&A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 109 (5th Cir. 1994)(citation omitted).

ERISA divides employee benefit plans into two categories: welfare benefit plans and pension plans. *Compare* 29 U.S.C. § 1002(1) *with id.* § 1002(2)(A). Unlike pension benefits, which are subject to stringent vesting requirements under ERISA, welfare benefits, such as health care insurance, are vested only if so

4

provided by contract. 29 U.S.C. § 1051(1) (providing that ERISA's vesting provisions do not apply to employee welfare benefit plans); *see Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 934-35 (5th Cir. 1993); *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1516 (8th Cir. 1988); *see also Curtiss-Wright Corp. v. Schoonejongen*, 115 S. Ct. 1223, 1228 (1995) ("Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans.") (citation omitted). Thus, whether a CBA vests health insurance benefits in retired employees is a question of contractual interpretation. *United Paperworkers Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252, 1261 (5th Cir. 1990); *Anderson*, 836 F.2d at 1516. In making this determination, the core issue is whether the parties intended to vest retiree health insurance benefits or whether they intended to tie those benefits to the CBA in effect at the time the claimants retired. *See Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62 (4th Cir. 1989); *Anderson*, 836 F.2d at 1516 (*UFCW Local Union No. 150-A v. Dubuque Packing Co.*, 756 F.2d 66, 69 (8th Cir. 1985)). Retired employees bear the burden of proving that their health insurance benefits are vested. *Anderson*, 836 F.2d at 1517; *Dubuque*, 756 F.2d at 70.

The interpretation of collective bargaining agreements is governed by federal law. *Paperworkers*, 908 F.2d at 1256. Nonetheless, the court may draw upon state rules of contractual interpretation to the extent that those rules are "consistent with federal labor policies." *Id.* (quoting *International Union, AUW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983)) (other

5

citations omitted).  Even when no identifiable federal labor policy favors or disfavors a particular interpretation, the rules of contractual interpretation are still applied with "flexibility . . . in the context of labor contracts."  *Id.*

In *Yard-Man*, the Sixth Circuit suggested an inference that retiree benefits are vested benefits.  716 F.2d at 1482.  In concluding that the parties intended to vest retiree benefits, the court explained:

> [R]etiree benefits are in a sense "status" benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained.  Thus, when the parties contract for benefits which accrue on the achievement of retiree status, there is an inference that the parties likely intended those benefits to continue so long as the beneficiary remains a retiree.

*Id.*  In *Paperworkers*, however, this circuit questioned the inference.  *Paperworkers*, 908 F.2d at 1261 n.12.  Nevertheless, we recognized that there is also no presumption that retiree health insurance benefits conferred by a CBA are coterminous with that CBA.  *See id*. at 1261.[1]  As the Supreme Court explained in *Litton Financial Printing v. NLRB*:

> [C]ontractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement. Exceptions are determined by contract interpretation.

---

[1]    This court noted in *Paperworkers* that "the fact that retirees have no voice in negotiating a new collective bargaining agreement" may be considered by the district court as "some evidence of intent" to vest retirement benefits.  *Paperworkers*, 908 F.2d at 1261 n.12.  Retired employees "have no voice" because even if the union wanted to force Masonite into negotiations on behalf of already-retired employees, it would be powerless to do so under the Supreme Court's holding in *Allied Chemical & Alkali Workers Local Union No. 1 v. Pittsburg Plate Glass Co., Chem. Div.*, 404 U.S. 157, 92 S. Ct. 383 (1971).

> Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement.

501 U.S. 190, 207, 111 S. Ct. 2215, 2226 (1991).

The retired employees argue that this court's decision in *NLRB v. Pinkston-Hollar Construction Services, Inc.*, requires that this court find that their benefits were vested. 954 F.2d 306, 310 (5th Cir. 1992). In particular, they rely on the court's conclusion that "pension, health and welfare plans are considered terms and conditions of employment that survive expiration of the agreement." 954 F.2d at 310 (citing *Hinson d/b/a Hen House Mkt. No. 3*, 175 N.L.R.B. 596 (1969), *enforced sub nom. Hinson v. NLRB*, 428 F.2d 133, 136-37 (8th Cir. 1970)). This sentence, however, must not be read in a vacuum. *Pinkston-Hollar* involved whether a company's unilateral withdrawal of welfare benefits from *active* employees after the expiration of the CBA violated the company's bargaining obligation under the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5). *Pinkston-Hollar*, therefore, sheds little light on the duration of retiree benefits, which are not subject to mandatory collective bargaining. *See Pittsburg Plate Glass*, 404 U.S. 157, 92 S. Ct. 383. Moreover, literal application of the *Pinkston-Hollar* language would be especially questionable in light of the skepticism expressed in *Paperworkers* about an inference that retiree benefits are vested. 908 F.2d at 1261 n.12.

Without the benefit of this inference, but bearing in mind the flexibility accorded in the interpretation of labor contracts, we turn to the CBAs and other documents at issue in this case. During the relevant period (1973-1993), Masonite, the union, and its local

7

entered into five CBAs. Each CBA incorporated an Insurance Benefits Agreement ("IBA"). The retired employees argue that the following provision of each IBA guaranteed health insurance benefits until their deaths for them and their dependents:

> Employees retiring at age 62 or later . . . will be entitled to comprehensive medical expense insurance benefits for themselves and their covered dependents *until the death of the retired employee.* (emphasis added)

According to the retired employees, the phrase "until the death of the retired employee" manifests the parties' intent to create vested lifetime health insurance benefits for those retiring under each CBA.

The company argues that this phrase serves to limit the company's obligation to covered dependents within the duration of the CBA. In the company's view, this phrase simply ensures that if a retired employee dies during the duration of the CBA, the covered dependents' benefits will cease upon the retired employee's death. In support of its position, the company relies on the Eighth Circuit's decision in *Anderson v. Alpha Portland Industries, Inc.*, in which the court construed a similar phrase to be a limiting rather than a vesting phrase. 836 F.2d at 1518. In *Anderson*, the CBA at issue contained a clause stating that "[f]or future retirees, Company will pay full costs of all group insurance for them and their dependents until death of retiree." *Id.* The court noted that although the phrase "until death of retiree" alone was "highly probative of intent to vest benefits," extrinsic evidence demonstrated that this phrase memorialized the company's specific rejection of a union proposal to continue the benefits of the

8

retiree's dependents after the death of the retired employee rather than demonstrating an intent to vest the retirees benefits. *Id.* Masonite does not point to similar extrinsic evidence indicating that the phrase was intended to be a limiting factor, although the contract language, like that in *Anderson*, appears to be "highly probative of an intent to vest benefits."

Another provision of the IBAs supports the construction of the "until death" clause proffered by the retired employees. The agreements make the death of an *active* employee a temporal milestone for cessation of dependents' benefits, but do so in a grammatical configuration quite different from the retiree benefits clause:

> (h) The spouse and dependent children of an active employee who dies while insured under this program and benefits will be insured under the plan until the end of the month following the month in which the employee's death occurred.

This provision suggests that when the union and Masonite intended to make an employee's death a temporal milestone, they did so unambiguously.

On the other hand, each IBA provides that "its term is coincident with that of the [CBA]." According to Masonite, the use of "coincident" in the IBAs makes clear that the retired employees' right to health insurance benefits expired when the CBA under which they retired did. The clause making the term of the IBAs coincident with the term of the CBAs, however, is not specific to retiree benefits. *Compare Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 566 (7th Cir. 1995) ("The Plan states that retiree

9

benefits terminate 'upon the date the Plan is terminated or amended to terminate the Retiree's [or his dependent's] coverage.'"); *see also Yard-Man*, 716 F.2d 1481-82 (noting the absence of any durational provision specific to retired employees). Instead, the IBAs detail the benefits of both active and retired employees. While the duration of any benefits that are subject to renegotiation may be tied to the duration of the CBAs, if the "until death" clause reflects the parties' intent that retiree benefits are vested, then the termination of the IBAs would not affect those vested benefits. *See Litton Fin. Printing Div.*, 501 U.S. at 207, 111 S. Ct. at 2226.

Masonite further relies on the reservation-of-rights clause in its ERISA Plan document in support of its argument that the retirees' benefits were not vested. The reservation-of-rights clause provides that "Masonite Corporation shall have the right to terminate, suspend, withdraw, amend or modify this Plan in whole or in part at any time." The company claims that this Plan provision empowers it to terminate retiree benefits altogether.[2] In the absence of the CBAs, the Plan's reservation-of-rights clause granting the company the right to amend or terminate the Plan might

---

[2] A clause in the Insurance Benefits Schedule, which is also incorporated into the CBA, provides that the Insurance Benefits Schedule is "subject to the terms and provisions of the Insurance Policy issued by the Insurance Company . . . ." Because the Plan was self-insured, the company argues, the Plan documents are the "insurance policy." The retired employees dispute that "insurance policy" can be construed to mean "self-insured Plan." Also, as the retired employees point out, the company's representative conceded in his deposition that this clause did not give the company the right to eliminate bargained-for benefits.

10

well end the inquiry in the company's favor. *See, e.g., Wise*, 986 F.2d at 934-35; *In re Unisys Corp. Retiree Med. Ben. "ERISA" Litig.*, 58 F.3d 896, 902-05 (3d Cir. 1995); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 856 (4th Cir. 1994); *Alday v. Container Corp.*, 906 F.2d 660, 665 (11th Cir. 1990). A reservation-of-rights clause in a plan document, however, cannot vitiate contractually vested or bargained-for rights. To conclude otherwise would allow the company to take away bargained-for rights unilaterally.[3] *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1297 (6th Cir. 1991); *cf. Paperworkers*, 908 F.2d at 1261.

In sum, we find that the phrase "until death" can be construed either as a limiting or a right-granting provision. *See Stewart v. KHD Deutz Corp.*, 980 F.2d 698, 703-04 (11th Cir. 1993). Because the agreements are ambiguous, the district court should have considered extrinsic evidence of intent. *Paperworkers*, 908 F.2d at 1256. If the agreements grant vested retiree benefits, then neither the fact that the IBA is coincident with the CBA nor the reservation-of-rights clause in the Plan would divest retired employees of those benefits. The district court's decision that the retired employees' rights to benefits expired with the CBAs in effect at the time they retired pretermitted its analysis of any extrinsic evidence of the parties' intent as well as any consideration of cost-of-benefits and level-of-benefits issues.

---

[3] The retired employees also complain of the district court's "heavy reliance" on a provision of the Summary Plan Description (SPD), which defines "plan." As the company points out, however, in the final analysis, the district court did not rely on this provision.

Accordingly, we remand to allow the district court an opportunity to consider extrinsic evidence of the parties' intent. *See Paperworkers*, 908 F.2d at 1257-61; *Stewart*, 980 F.2d at 704.

*Breach of Fiduciary Duty*

The retirees also appeal the district court's grant of summary judgment to the company on the plaintiffs' claim that Masonite breached its fiduciary duty as an ERISA plan administrator. In the district court, Masonite argued summary judgment was proper as to all claims based on its contention that that there was no summary judgment evidence that the retirees had a lifetime vested right to health insurance benefits. Apparently assuming that it will prevail on the vesting issue, Masonite argues on appeal that it is entitled to summary judgment on the fiduciary duty claims *because the retirees' benefits were not vested*.[4] Because the vesting issue is to be reconsidered on remand, we reverse and remand the retirees' breach of fiduciary duty claims as well.

---

[4] Masonite cites two cases which suggest that whether an employer, which also acts as plan sponsor, has breached its fiduciary duty depends on whether the benefits with which it interfered were vested. *See Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1524 (5th Cir. 1994) (holding that an employer does not act as a fiduciary in amending or terminating a plan, "*provided that the benefits reduced or eliminated are not accrued or vested at the time*, and that the amendment does not otherwise violate ERISA or the express terms of the plan.")(citation omitted)(emphasis added); *John Morrell & Co. v. UFCW Int'l Union*, 37 F.3d 1302, 1308 (8th Cir. 1994)("ERISA does not bar an employer that is also a fiduciary from exercising its business judgment to modify *non-vested* welfare benefits.")(citation omitted)(emphasis added).

Given Masonite's argument on appeal, we take no position as to whether the Supreme Court's conclusion that an employer does not act as a fiduciary when amending or terminating a benefits plan, *see Curtiss-Wright*, 115 S. Ct. at 1228, applies where vested benefits are terminated or amended unilaterally by an employer.[5]

---

[5] The retirees argue at length that irrespective of the vesting issue, their breach of fiduciary duty claims should be allowed under the Supreme Court's analysis in *Varity Corp. v. Howe*, 116 S. Ct. 1065 (1996). In *Varity*, the Court held that an employer, which also served as an ERISA plan administrator, breached its fiduciary duty when it induced plan beneficiaries by "deliberate deception" to "switch employers and thereby voluntarily release [the company] from its obligation to provide them benefits . . . ." *Id.* at 1069.

On the summary judgment record in this case, there is no genuine issue of material fact as to a *Varity*-type breach of fiduciary duty. The retirees attempt to create an issue of fact by pointing to Masonite's statement that its new Plan was "an effort to reduce 'the sky rocketing cost of quality health care.'" This statement, far from being deceptive, is literally true. The retirees also point to the re-enrollment form sent to retirees for their signatures, which contained language authorizing the company to deduct health insurance premiums from the retirees' pension checks, "if applicable." They argue that the Hobson's choice posed by the re-enrollment forms evidences Masonite's attempt to improve its own financial position at the retirees' expense. Even if true, that fact does not create a fact issue under *Varity* absent deception. *See Curtiss-Wright*, 115 S. Ct. at 1228. Whether the company is in fact entitled to require retiree premium contribution is a separate matter that may be resolved by the district court on remand. In sum, the retirees' reliance on *Varity* is misplaced.

The retirees also complain that the company did not present the retiree benefits issue for collective bargaining. The simple answer is that the company was not required to do so. *See Pittsburg Plate Glass*, 404 U.S. at 176-82, 92 S. Ct. at 396-99.

13

## II.

For these reasons, we reverse and remand to allow the district court an opportunity to consider extrinsic evidence regarding whether the parties intended to vest retiree health insurance benefits, and if so, at what level and at whose expense. Should the district court determine that there is an issue of fact on the vesting issue, it should also reconsider whether summary judgment on the fiduciary duty claims is appropriate.