# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20572

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2014

Lyle W. Cayce
Clerk

FLOYD L. SAVANT,

Plaintiff - Appellant

v.

APM TERMINALS,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-1980

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Floyd L. Savant appeals the district court's grant of summary judgment in favor of his employer, Universal Maritime Service Corp. ("Universal Maritime"),[1] dismissing his claim under the Age Discrimination in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Universal Maritime claims that Savant erroneously sued "APM Terminals," the Appellee named in the case caption. Universal Maritime also does business as APM Terminals.

No. 13-20572

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* For the following reasons, we AFFIRM.

## FACTS AND PROCEEDINGS

Until October 2009, Savant worked as a yard tractor[2] operator at one of Universal Maritime's port terminal facilities. Universal Maritime is a member of the West Gulf Maritime Association ("West Gulf"), a multi-employer trade association that negotiates and administers multi-employer collective bargaining agreements with the International Longshoremen's Association ("ILA" or the "Union") and its affiliated local unions. Savant, who was born in 1934, has been a member of the ILA Local No. 24 for over twenty years.

A collective bargaining agreement ("CBA") governed Savant's employment at Universal Maritime. The South Atlantic and Gulf Coast District ("SAGC District") had negotiated this agreement with West Gulf on behalf of the Union. The CBA states that its grievance procedure and arbitration "shall be the exclusive remedy with respect to any and all disputes arising between the Union or any person working under the Agreement . . . and the Association or any company acting under the Agreement." In addition to the CBA, the SAGC District and West Gulf also negotiated a Memorandum of Understanding ("MOU") to supplement the CBA's terms. The MOU states that "[a]ny complaint that there has been a violation of any employment law, such as . . . [the] ADEA, . . . shall be resolved solely by the grievance and arbitration provisions of the collective bargaining agreement." The MOU also states that its procedure "shall be a worker's sole remedy for a violation of any anti-discrimination or employment law."

In October 2009, while Savant was operating a yard tractor, he was involved in an accident with an over-the-road driver who ran through a stop

---

[2] A yard tractor is a truck that is used to haul large shipping containers.

sign. Both vehicles were damaged. As required under the applicable Occupational Safety and Health Administration ("OSHA") regulations and an OSHA industry settlement agreement, Universal Maritime referred Savant to a refresher training and evaluation for operating powered industrial trucks ("PITs"). *See* 29 C.F.R. § 1910.178(*l*)(4)(ii)(B). A PIT operator who does not pass this evaluation will not be recertified and will not be permitted to operate PIT equipment until he successfully completes the PIT refresher training. Under West Gulf's training policies, a PIT operator who fails the evaluation three times in one year must wait one year before he will be permitted to attend the training again.

Savant attended PIT refresher training three times during the year following the October 2009 accident, and Universal Maritime contends that he failed the evaluation each time. As a result, he is no longer allowed to operate PIT equipment at Universal Maritime. Savant has nevertheless continued working at Universal Maritime's facilities in different job classifications, earning the same hourly rate that he made as a PIT operator. Instead of filing a grievance through the Union challenging his evaluation results, Savant filed this lawsuit in federal court, alleging age discrimination in violation of the ADEA.

In the district court, Universal Maritime filed a motion for summary judgment, arguing that Savant lacked standing because he failed to exhaust the CBA and MOU's grievance and arbitration procedures.[3] The district court granted the motion for lack of standing and entered judgment in favor of Universal Maritime. This appeal timely followed.

---

[3] Universal Maritime argued in the alternative that, even if Savant had standing, his ADEA claim nevertheless failed on the merits. The district court did not reach this argument.

No. 13-20572

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). This court is "not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." *Rogers*, 755 F.3d at 350 (internal quotation marks omitted).

## DISCUSSION

The district court held that Savant lacked standing to bring his ADEA claim in federal court because he had failed to exhaust the grievance and arbitration remedies under the CBA and MOU. A plaintiff is ordinarily "required to attempt to exhaust any grievance or arbitration remedies provided in [a] collective bargaining agreement" before seeking relief in federal court. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983); *Harris v. Chem. Leaman Tank Lines, Inc.*, 437 F.2d 167, 170 & n.3 (5th Cir. 1971). This principle applies even when a plaintiff is alleging employment discrimination in violation of a federal statute. In *14 Penn Plaza LLC v. Pyett*, the Supreme Court clarified that, in the absence of statutory language to the contrary, a union may agree with an employer to submit employees' statutory claims exclusively to arbitration or another non-judicial grievance procedure. 556 U.S.

247, 256–58, 274 (2009). For that agreement to be enforceable, however, the CBA must "clearly and unmistakably require[] union members to arbitrate." *Id.* at 274. In *Penn Plaza*, the Court held that this "clear and unmistakable" standard was satisfied when an anti-discrimination provision explicitly referenced the ADEA and stated that "[a]ll such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations." *Id.* at 252, 260.

This court applied *Penn Plaza*'s test in *Ibarra v. United Parcel Service*, 695 F.3d 354 (5th Cir. 2012). The court agreed with other circuits that have concluded that, "for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." *Id.* at 359–60. In *Ibarra*, the court concluded that the CBA did not require an employee to submit her Title VII claim to the grievance process because the CBA only stated generally that "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement" must be submitted to the grievance process. *Id.* at 356–57.

This dispute therefore turns on whether the district court properly concluded that there was no genuine issue of fact as to whether the MOU and the CBA, when read together, clearly and unmistakably waived union members' right to a judicial forum for ADEA and other statutory discrimination claims. When interpreting a collective bargaining agreement, federal law governs. *See Int'l Ass'n of Machinists & Aerospace Workers v. Masonite Corp.*, 122 F.3d 228, 231 (5th Cir. 1997); *see also Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–57 (1957). Nevertheless, "courts may draw upon state rules of contractual interpretation to the extent

that those rules are consistent with federal labor policies." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 365, 377 (5th Cir. 2008) (internal quotation marks omitted). "However, the construction and application of a collective bargaining agreement's terms cannot be strictly confined by ordinary principles of contract law." *United Paperworkers Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252, 1256 (5th Cir. 1990). "The provisions of a labor contract may be more readily expanded by implication than those of contracts memorializing other transactions." *Id.* Moreover, "[w]hen several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, and the court should attempt to give effect to every contractual provision." *Id.*

> Here, the CBA, by itself, is not clear and unmistakable. It states:

> This grievance procedure and arbitration shall be the exclusive remedy with respect to any and all disputes arising between the Union or any person working under the Agreement . . . and [West Gulf] or any company acting under the Agreement . . . and no other remedies shall be utilized, except those remedies specifically provided for under this Agreement.

Like the CBA in *Ibarra*, the CBA governing Savant's employment does not specifically identify the ADEA, and it does not state that statutory discrimination claims are subject to its grievance and arbitration procedures. Therefore, the CBA alone cannot bar Savant from filing suit under the ADEA.

The MOU, however, is clear and unmistakable. It states: "Any complaint that there has been a violation of any employment law, such as . . . [the] ADEA, . . . shall be resolved solely by the grievance and arbitration provisions of the collective bargaining agreement." The MOU further clarifies that its procedure "shall be a worker's sole remedy for a violation of any anti-discrimination or employment law." Although *Penn Plaza* and *Ibarra* only addressed the clarity of arbitration clauses in CBAs, Savant has not

articulated a reason not to extend the rule from those cases to clauses in an MOU or other agreement that is binding on the union and the employer. In other words, for an arbitration agreement to be enforceable as to statutory claims, either the CBA or an ancillary agreement binding the union and the employer must satisfy the "clear and unmistakable" rule. *See Anglin v. Ceres Gulf Inc.*, 503 F. App'x 254, 255 (5th Cir. 2012) (noting that if an MOU between the union and employer bound the employee, the employee would not have been able to bring her statutory claims in federal court because "[t]he MOU specifically identifie[d] Title VII" and indicated that "complaints brought under that statute are subject to the CBA's grievance and arbitration provisions"). Therefore, here, given the MOU's explicit references to the ADEA and other statutory discrimination claims, the district court properly concluded that the MOU satisfies the *Ibarra* requirement.

On appeal, Savant argues that the district court erred because the MOU was voluntary, but not binding on the Union. First, Savant emphasizes that West Gulf and the Union never signed the MOU. This fact, however, is not dispositive. "An employer can in writing obligate itself to follow portions of a collective bargaining agreement without signing the collective bargaining agreement itself." *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 201 (5th Cir. 1992); *see also NLRB v. Beckham, Inc.*, 564 F.2d 190, 194 (5th Cir. 1977) ("Once an agreement has been reached, . . . it is an unfair labor practice for a party to refuse to sign the written contract.").[4] Indeed, a CBA

---

[4] Our sister circuits have reached similar conclusions. *See, e.g., Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 767 (7th Cir. 2004) ("[A] signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement."); *Brown v. C. Volante Corp.*, 194 F.3d 351, 352, 354–56 (2d Cir. 1999) (holding that the conduct of an employer who did not sign two CBAs, but paid contributions and wages at the rates agreed to in the agreements, manifested an intent to adopt the unsigned agreements); *Trs. of Wyo. Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co. of Wyo.*, 850 F.2d 613, 622 (10th Cir. 1988) (concluding that the parties

need not even be reduced to writing. "Instead, what is required is conduct manifesting an intention to abide by the terms of an agreement." *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 356 (5th Cir. 1981).

The evidence in the record supports the district court's conclusion that the parties intended to be bound by the MOU. First, with no objection from Savant's counsel, Savant admitted at his deposition that the MOU was an agreement between his local union and West Gulf on how statutory discrimination claims would be resolved. He also admitted that he had authorized the Union to enter into these types of agreements on his behalf. Universal Maritime also submitted an affidavit from the current president of West Gulf stating that the MOU procedures had been applied to the ILA locals and have been used since at least 2004. Indeed, the former president of West Gulf had sent the unions a letter confirming that the local unions would be bound by the MOU, and there is no evidence in the record that Savant's local union tendered an objection to that letter. Next, legal representatives of West Gulf, the SAGC District, and ILA Local No. 24 (Savant's local union) gave a presentation in May 2008 about the MOU's grievance and arbitration procedure, describing it as "a worker's sole remedy for any violation of anti-discrimination laws." Finally, at least four grievance reports were filed between July 2008 and April 2011 by ILA locals, including one from Savant's local union, adjudicating discrimination claims using the MOU's grievance and arbitration procedures.

---

had reached an agreement even though the Union had not yet signed a "Laborers Compliance Agreement"); *NLRB v. Deauville Hotel*, 751 F.2d 1562, 1569 n.10 (11th Cir. 1985) ("The[] act of signing [the CBA] was nothing more than ministerial.").

No. 13-20572

Resisting the conclusion that the MOU is binding on the parties, Savant contends that the Union rejected the MOU.[5] Savant, however, fails to cite any evidence in the summary judgment record that supports this assertion. For one, there is no indication in the record that the Union's constitution, bylaws, or rules and regulations required the Union to submit proposed agreements or MOUs to the union membership for approval. Without such a requirement, the Union could have agreed to the MOU without ever consulting the local unions and union membership. *See O'Neill v. Air Line Pilots Ass'n, Int'l*, 886 F.2d 1438, 1447 (5th Cir. 1989) ("The [Labor Management Reporting Disclosure Act, 29 U.S.C. § 411(a)(1),] does not require submission of proposed agreements or any segments thereof to the membership; nor grant members the right to vote on negotiating, executing and approving contracts."), *rev'd on other grounds*, 499 U.S. 65 (1991); *see also White v. White Rose Food*, 237 F.3d 174, 182 (2d Cir. 2001) ("Federal labor law does not require rank-and-file ratification of employer-union agreements. Such ratification is required only if the union's constitution or by-laws or the agreement itself so provides." (citations omitted)). Moreover, in his application for membership in the Union, Savant signed a statement agreeing to "ratify and approve any collective bargaining agreement entered into on [his] behalf by the Union."

Finally, finding no support in the summary judgment record of this lawsuit, Savant relies instead on this court's unpublished opinion in *Anglin v. Ceres Gulf Inc.* In *Anglin,* the court considered a similar set of characters—the ILA, the SAGC District, and West Gulf—and the same CBA and MOU. 503 F. App'x at 254–55. Martha Anglin, the plaintiff, had filed a Title VII lawsuit against her employer and West Gulf, and West Gulf, in turn, similarly argued

---

[5] In an interrogatory response, Savant also claimed that "[t]here are not any memoranda of agreement or understanding that has [sic] been approved by the union and its members."

9

that Anglin was required to pursue her discrimination claim through the grievance and arbitration procedure. *Id.* at 255. Savant argues that *Anglin* "established" that "the union has rejected the MOU." But that is a mischaracterization of the court's holding: *Anglin* reversed the grant of summary judgment against Anglin because "[t]here remain[ed] a factual question as to whether [the MOU] is binding on Anglin." *Id.* As the court explained, Anglin's uncontroverted testimony was that "the MOU was rejected by local union members." *Id.* Anglin, however, belonged to a different ILA local union (Local No. 1351) than the local union that represents Savant (Local No. 24). *Id.* at 254. Therefore, Anglin's testimony about Local No. 1351's rejection of the MOU does not create a genuine issue of fact as to whether Savant's Local No. 24 rejected or approved the MOU.[6] And as discussed above, the summary judgment record in this case supports the district court's conclusion that the MOU bound Savant's local union.

Having resolved that the parties in this case have a valid agreement to arbitrate Savant's ADEA claim, the court concludes that the arbitration provisions in the CBA and MOU must be enforced. Because Savant did not exhaust the CBA's grievance procedures, he lacks standing to pursue his ADEA claim in federal court. The court therefore will not address the merits of his age discrimination claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Universal Maritime.

---

[6] Savant's reliance on an affidavit from Martha Anglin that he filed in his own lawsuit is similarly misplaced because it discusses Anglin's local union, not Savant's. Moreover, the district court struck the Anglin affidavit, and Savant does not challenge the district court's ruling on the motion to strike on appeal. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 445 (5th Cir. 2000) ("Generally, we deem abandoned those issues not presented and argued in an appellant's initial brief . . . .").