United States Court of Appeals
Fifth Circuit

**F I L E D**

November 15, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-20136

CONTINENTAL AIRLINES, INC.,

Plaintiff - Counter Defendant - Appellant

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

Defendant - Counter Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before BARKSDALE, Circuit Judge, PICKERING, Circuit Judge, and
LYNN, District Judge.[*]

LYNN, District Judge:

Continental Airlines, Inc. ("Continental") appeals the

district court's grant of summary judgment in favor of Appellee

International Brotherhood of Teamsters on Continental's action to

vacate an arbitration award under the Railway Labor Act ("RLA"),

45 U.S.C. § 151 et seq., which reinstated an employee who was

terminated for allegedly violating a "last chance agreement"

after testing positive for alcohol.  For the reasons stated

---

[*] District Judge for the Northern District of Texas, sitting by
designation.

1

below, the court REVERSES the district court and RENDERS judgment in favor of Continental.

## I. FACTS AND PRIOR PROCEEDINGS

The facts relevant to this appeal are as follows. Continental hired Mark Johnson in 1991 as an aircraft mechanic. In August 2000, Johnson reported to work and was subjected to a random alcohol breath test as required by the Department of Transportation. The test established that Johnson had a blood alcohol content ("BAC") of .115, which is above the legal limit for intoxication in Texas. As a result, Johnson was discharged. He subsequently filed a grievance contesting his discharge. To resolve the dispute, Johnson, with the assistance of the International Brotherhood of Teamsters ("IBT"), entered into a "last chance agreement" ("LCA") with Continental. Under the LCA, Johnson was permitted to return to work, provided he satisfied the terms of the agreement. The LCA required that Johnson:

1) submit to an evaluation by Continental's Employee Assistance Program ("EAP") director;[1]
2) complete a course of rehabilitation, if recommended by the EAP director;
3) submit a letter of resignation to the EAP director to be used to terminate his employment should he fail to

---

[1] Continental notes that its EAP director serves as the company's Substance Abuse Professional ("SAP") for purposes of federal regulations governing transportation employee rehabilitation programs. See 49 C.F.R. § 40 (explaining requirements and role of SAP).

2

satisfy the terms of the agreement or the recommended rehabilitation program;

4) agree he would be terminated if he subsequently failed any drug or alcohol test (test positive for a BAC of .04 or greater);

5) agree to be subject to random no-notice testing for a set period of time;

6) complete a return to work alcohol test after release by the EAP director.

Pursuant to the terms of the LCA, Johnson met with the EAP director for an evaluation, at which time he was diagnosed with alcohol dependency. He was thus required to complete an out-patient alcohol treatment program, which he did. Prior to returning to work, Johnson entered into an EAP rehabilitation agreement ("EAP agreement") with Continental, which set forth specific terms for his continued employment. The EAP agreement included the following relevant provisions:

1) During the 1-year rehabilitation period/contract, commencing with the date of this Agreement, any use of alcohol or illicit drugs will be considered a violation of this Agreement. This includes mouthwash or other medications/substances which may contain alcohol. If your doctor prescribes medication which contains alcohol/narcotic drugs, you are required to inform the EAP staff of such medication.

2) You are subject to no-notice testing during the rehabilitation period for not less than 1 year or more than 5 years. The no-notice test screens for 10 drugs, plus alcohol. Failure to report for a test will result in your termination. . . .

4) You are responsible for maintaining contact with the EAP Manager on at least a monthly basis for the purpose of monitoring your progress. . . .

3

At the time of the EAP agreement, the EAP director orally instructed Johnson to avoid drugs and alcohol, including over-the-counter medications that may contain alcohol.

Prior to returning to work, Johnson was given, and passed, an alcohol test.

On March 20, 2001, Johnson left the EAP director a voicemail stating that he was taking over-the-counter cough medicine. Although the EAP director received the message, he never contacted Johnson about it. On March 22, 2001, Continental tested Johnson for alcohol. Johnson tested positive, apparently due to his ingestion of cough medicine. His BAC was .04 at 12:40 p.m. His confirmation test, taken at 1:05 p.m., showed a BAC of .029.

Continental terminated Johnson for consuming alcohol. Johnson filed a grievance protesting his termination. The arbitrators, known as The System Board (the "Board"), consisted of representatives of IBT and Continental and a neutral chairperson. The Board held an evidentiary hearing on Johnson's grievance. A majority of the Board issued an opinion holding that the LCA and the EAP agreement were valid and binding, and that the Board had jurisdiction to determine whether Johnson

violated the agreements.[2]  The Board concluded that Johnson had not violated the LCA or the EAP agreement and ordered Johnson reinstated.

On March 6, 2003, Continental filed an action against IBT in the Southern District of Texas, seeking to vacate the Board's award.  Both parties moved for summary judgment.  On January 8, 2004, the district court issued a memorandum opinion and order denying Continental's motion and granting IBT's motion, and upholding the award.  On February 9, 2004, the district court stayed the enforcement of the award, pending appeal.

Continental appeals the district court's ruling and seeks vacatur of the Board's award on the grounds that (1) the district court applied the wrong standard of review under the RLA; (2) the district court erred in upholding the award because the Board exceeded its authority, by ignoring the plain language of the agreements and by substituting its judgment for that of the EAP director; and, (3) even if the award were otherwise proper, the district court should have vacated it as violative of public policy.

---

[2] Continental's Board representative did not sign the opinion. However, the parties do not dispute that the opinion is nevertheless binding on the parties.

## II. ANALYSIS

This court reviews <u>de novo</u> a district court's grant and denial of summary judgment. <u>Int'l Union of Operating Eng'rs, Local 351 v. Cooper Natural Res., Inc.</u>, 163 F.3d 916, 918 (5th Cir. 1999).

### A. Standard of Review

This court must first determine whether the district court applied the appropriate standard of review in reviewing the Board's award. The RLA governs disputes between airline carriers and their employees, with the stated purpose of avoiding interruptions to commerce that might result from such disputes. 45 U.S.C. § 152. The RLA establishes mandatory procedures for the resolution of both major and minor disputes. <u>See</u> <u>Consol. Rail Corp. v. Ry. Labor Exec. Ass'n</u>, 491 U.S. 299, 302-03 (1989). A "major" dispute involves the formation of collective bargaining agreements ("CBAs")--agreements governing rates of pay, rules, or working conditions of employees, as a class. <u>Id.</u> at 302. These disputes arise when it is alleged that a CBA is not in place, or when a party seeks to change the terms of an existing agreement; therefore, "'the issue is not whether an existing agreement controls the controversy.'" <u>Id.</u> (quoting <u>Elgin, J. & E.R. Co. v. Burley</u>, 325 U.S. 711, 723 (1945)). A "minor" dispute arises "out

6

of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Id. at 303. Thus, a minor dispute arises out of the enforcement of an existing CBA. Id. Under the RLA, minor disputes must be resolved through binding arbitration before an adjustment board established by the union and the employer. Id. Continental and IBT agree that the underlying dispute is a minor dispute under the RLA.

Generally, arbitration awards arising from minor disputes are reviewable by a district court on narrow grounds. Specifically, judicial review is limited to (1) whether the Board failed to comply with the RLA; (2) whether the Board failed to conform or confine itself to matters within the scope of its jurisdiction; and (3) whether the Board's decision was the result of fraud or corruption. 45 U.S.C. § 153(q)(2004). Normally, an award is deemed to be within the Board's jurisdiction when it is grounded in the CBA. See Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, 889 F.2d 599, 602 (5th Cir. 1989). Absent one of these grounds, an award is binding upon the parties and the findings are conclusive. Eastern Air Lines, Inc. v. Transport Workers Union, 580 F.2d 169, 172 (5th Cir. 1978). Unless a court concludes that the Board's interpretation of the contract is "wholly baseless and completely without reason," the

Board's interpretation must stand.   Id. (quoting Gunther v. San Diego & Ariz. Eastern Ry. Co., 382 U.S. 257, 261 (1965)).  The Supreme Court has explained that in reviewing a Board's interpretation of a contract,

> a court should not reject an award on the ground that the arbitrator misread the contract . . . . [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.  But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).[3]  The district court employed this highly deferential standard in reviewing the Board's award.

Continental argues that because this dispute involved an LCA and because the Board ignored an express term of the agreement, the district court should have reviewed the award under a "no deference" standard, pursuant to this court's decision in Cooper Natural Resources.[4]  IBT contends that the holding of Cooper

_____

[3] While Misco dealt with the review of an arbitration award under the Labor Management Relations Act, this court has cited Misco with approval when setting out the standard of review governing awards under the RLA.  See American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 343 F.3d 401, 406 (5th Cir. 2003).

[4] The parties treat the EAP agreement as though it were a part of or an addendum to the LCA, which it is.  Thus, we treat the EAP and LCA as a part of the same agreement.

Natural Resources does not require that awards involving LCAs receive more searching judicial review; i.e., less deference, than awards involving collective bargaining agreements.

In Cooper Natural Resources, this court upheld the district court's vacatur of an arbitrator's award, in part because the arbitrator ignored the LCA. The court held that when parties enter into an LCA, "[t]he LCA must be thought of as a supplement to the CBA" which constitutes "the parties' chosen means of dispute resolution," and which is binding on the arbitrator. Id. at 919. The court did not state, however, that an arbitrator's decision interpreting an LCA is entitled to any less deference than is one interpreting a CBA, as Continental contends. Continental relies heavily on the statement in Cooper Natural Resources that "an arbitrator ignoring the explicit terms of a last chance agreement is owed no deference, and his award must be closely scrutinized". Id. However, we conclude that the panel in Cooper was not mandating a more stringent standard of review for arbitration awards arising from LCAs than from reviews of CBA determinations.

In Cooper Natural Resources, the arbitrator ignored the LCA, relying solely on the CBA. The court in that case was not faced with an issue like that in the present case, where the arbitrator interpreted a provision of the LCA and a party challenged the

9

arbitrator's interpretation. Thus, <u>Cooper Natural Resources</u> does not support Continental's position that a more searching review of an arbitrator's interpretation of an LCA is mandated.

Second, none of the authorities relied upon by the court in <u>Cooper Natural Resources</u> support a "no deference" standard of review for awards arising from LCAs. In <u>Tootsie Rolls Indus., Inc. v. Local Union No. 1, Bakery, Confectionary & Tobacco Workers Int'l Union,</u> 832 F.2d 81 (7th Cir. 1987) (holding that an arbitrator's award should have been vacated), the court applied the same standard of review to an award involving an LCA as it typically applied to awards involving CBAs. Noting that an award under a CBA should be upheld as long as it "draws its essence" from the CBA, the court determined that by basing the award on a company policy outside the applicable LCA, the arbitrator's award did not "draw its essence" from the LCA, and was thus improper. <u>Id.</u> at 83-84.

Similarly, in <u>Coca-Cola Bottling Company of St. Louis v. Teamsters Local Union No. 688</u>, 959 F.2d 1438 (8th Cir. 1992) (reviewing an arbitrator's award involving an LCA), the court cited the same standard of review identified in <u>Misco</u>, for a CBA, as applicable to awards under LCAs. <u>Id.</u> at 1440.

The pre-<u>Misco</u> case of <u>Bakers Union Factory #326 v. ITT Continental Baking Co.</u>, 749 F.2d 350 (6th Cir. 1984), which the

10

Sixth Circuit reaffirmed in <u>Ohio Edison Co. v. Ohio Edison Joint Council</u>, 947 F.2d 786 (6th Cir. 1991), is less explicit than <u>Coca-Cola Bottling</u>; however, the Sixth Circuit appears to recognize that the same deferential standard of review applies to review of an arbitrator's <u>interpretation</u> of an LCA as applies to review of the interpretation of a CBA. In <u>Bakers Union</u>, the court addressed the question of whether an arbitrator's award, ignoring the LCA, was properly upheld. The district court cited the general rule that the decision of an arbitrator will not be overturned as long as it derives its authority from the CBA. Concluding that it did so derive its authority, the district court upheld the award. On appeal, the Sixth Circuit held that while the general rule was as described, the scope of review was broader when the parties entered into an LCA. <u>Id.</u> at 353-54. That is what Continental argues for here. While the <u>Bakers Union</u> decision speaks of narrow review and broad review, its discussion focuses on the situation where an arbitrator ignores an LCA, as the arbitrator did in <u>Cooper Natural Resources</u>. The court was not faced with a situation where an arbitrator's interpretation of an LCA was being challenged. In that situation, the court seemed to recognize that a deferential standard of review would apply: "[A]n arbitrator may determine whether the settlement agreement has, in fact, been breached . . . . Th[is]

11

determination[ ] retain[s] the benefit of a deferential standard of review." Bakers Union, 749 F.2d at 356. In light of the facts and holding of Cooper Natural Resources and the authority relied upon in it, we hold that the standard of review applicable here is the deferential standard of review articulated by the Supreme Court in Misco and employed by the district court below. Therefore, the court rejects Continental's argument that this court is to give no deference to the arbitrator's award.

**B. Did the District Court Nonetheless Err in Upholding the Award?**

The court must next determine whether, under a deferential standard of review, the district court nonetheless erred in upholding the award. Continental makes two arguments that the award should be vacated, because the Board exceeded the scope of its jurisdiction. First, it argues that the Board ignored the plain terms of the LCA and EAP. Second, it argues that the Board exceeded its authority by substituting its judgment for that of Continental's EAP director.

In order to be within the Board's authority, the award must "draw its essence" from the LCA and EAP. See Misco, 484 U.S. at 38. The Board made the following findings and conclusions about Johnson's violations of the LCA and EAP agreement:

12

- While Johnson did not visit his physician and receive a written prescription, his doctor's office approved for use over-the-counter cough medicine until he could be seen by his physician.
- Johnson left the EAP director a voicemail informing him that he was taking cough medicine. The director never returned Johnson's call.
- His doctor's approval, while not qualifying as a formal written prescription, "met the letter and spirit" of the EAP agreement. He obtained approval of the medication and promptly notified the EAP director.
- It would have been reasonable for the EAP director to warn Johnson that the use of the cough medicine could potentially violate the agreement.
- The EAP director failed to provide an adequate explanation for his failure to warn Johnson.
- Johnson did not violate the LCA's requirement that Johnson not test positive for the presence of drugs or alcohol in a volume equal to or greater than .04%. The confirmation test taken in March 2001 provided a reading of .029%-well below .04% and insufficient to constitute a violation of the LCA.
- Johnson nonetheless has demonstrated a "pathetic lack of knowledge of and commitment to what it takes to live a life of sobriety" because he could not recall his sobriety date or the first steps of the AA twelve-step program.
- In light of the above, Johnson should be reinstated to his former position and made whole for lost wages and benefits.

Continental argues that these findings reflect that the Board ignored the plain terms of the contract because it (1) ignored the language "doctor's prescription" when it held that the approval of the use of cough medicine containing alcohol by a member of a doctor's staff satisfied the requirements of the EAP agreement, which was incorporated into the LCA agreement, for a doctor's prescription for any medication containing alcohol and

(2) it added a "last chance warning" requirement to the EAP agreement and the LCA by determining that the EAP director should have contacted Johnson regarding his voicemail.  IBT argues that the award should be upheld because the Board interpreted the LCA and EAP when it made its determination.  IBT also argues that the Board's determination that Johnson should have been warned was irrelevant to its award since the Board separately determined that Johnson had not violated the LCA or EAP.

Under Misco, an arbitrator's award is to be upheld as long as the arbitrator "is even arguably construing or applying the contract."  Misco, 484 U.S. at 38.  Here, the Board concluded that Johnson was in compliance with the LCA and EAP because he spoke with someone on his doctor's staff and obtained approval from that person to take over-the-counter cough medicine.  He then informed the EAP Director via voicemail that he was taking such medication.   The record establishes that Johnson contacted his doctor's office to schedule an appointment, that he spoke with a member of the doctor's staff, and that the staff member informed Johnson that the doctor could not prescribe medicine without an appointment, but approved his taking over-the-counter cough medicine until his appointment date.  There is no evidence of any kind that Johnson or a member of the doctor's staff spoke with the doctor regarding Johnson's situation, or that the

14

doctor, either directly to Johnson, or indirectly to his staff, instructed Johnson to take over-the-counter cough medicine which contained alcohol. Thus, the uncontested evidence is that Johnson's doctor never approved the use of the cough medicine he took, either orally or by a formal prescription. Because Johnson's doctor did not prescribe him medicine containing alcohol, his notification to the EAP director, and that person's not calling him back, is irrelevant. The LCA and EAP do not require a call back to Johnson. By failing to require proof of a <u>doctor's</u> order, the Board's interpretation effectively reads "doctor" out of the EAP agreement. Such an interpretation is not an arguable construction of the agreements; thus, the Board exceeded the scope of its jurisdiction in fashioning its award. Accordingly, we hold that the district court erred in upholding the award, and that the award should be vacated.

Because we conclude that the Board's interpretation failed to arguably construe the agreements, we need not address two other issues raised by Continental as grounds to vacate the award; <u>i.e.</u>, whether the Board otherwise exceeded its authority or whether the award should be vacated on public policy grounds. The judgment of the district court is REVERSED and RENDERED.

## III. <u>CONCLUSION</u>

15

For the foregoing reasons, we REVERSE the district court's decision granting summary judgment for IBT and upholding the arbitration award, and RENDER summary judgment in favor of Continental, vacating the arbitration award and reinstating Continental's discharge of Mark Johnson.

REVERSED AND RENDERED