**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1489
_____

STONEMOR, INC.

v.

THE INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 469,
                                        Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 3-22-cv-1388)
District Judge:  Honorable Georgette Castner
_____

Argued
March 5, 2024

Before:  JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed: July 10, 2024)
_____

Raymond G. Heineman
Seth B. Kennedy   **[ARGUED]**
Kroll Heineman Ptasiewicz & Parsons
91 Fieldcrest Avenue Suite 35
Edison, NJ   08837
        *Counsel for Appellant*

Elizabeth Mincer
Leah A. Mintz   **[ARGUED]**
Robert M. Palumbos
Duane Morris
30 S. 17th Street
Philadelphia, PA   19103
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**JORDAN**, *Circuit Judge*.

The International Brotherhood of Teamsters, Local 469 (the "Union") appeals the District Court's decision vacating an arbitration award. "[C]ourts are restricted in reviewing the decision of an arbitrator resolving a labor dispute under a collective bargaining agreement … [b]ut that deference is not unlimited." *Monongahela Valley Hosp., Inc. v. United Steel Workers Int'l Union*, 946 F.3d 195, 199 (3d Cir. 2019). Here, the arbitrator evinced a manifest disregard for the underlying collective bargaining agreement when she held that a grievance by the Union was timely filed, so we will affirm the District Court's judgment.

2

## I. FACTS

Appellee StoneMor, Inc. operates cemeteries and funeral homes. Maintenance workers at two of its cemeteries unionized and certified the Union as their exclusive bargaining representative. The Union then entered into negotiations for a collective bargaining agreement with StoneMor.

Those parties came to a tentative agreement (the "Agreement"), which they signed and through which they intended to be "legally bound." (J.A. at 59; *see also* J.A. at 81 ("This Agreement shall be binding upon the parties hereto[.]").) The Agreement was to remain "tentative until ratified by a majority of the [cemetery maintenance] employees[.]" (J.A. at 59; *see also* J.A. at 62 ("These Agreements are tentative until ratified by the employees.").) It provided a grievance procedure, giving the Union ten days to write StoneMor about a disagreement "as to the interpretation of or alleged violation of" the Agreement. (J.A. at 71.) The Agreement emphasized that "[t]ime is of the essence" in the handling of disputes. (J.A. at 71.) If the parties could not settle a dispute, it would be subject to binding arbitration.

The Agreement was ratified on October 5, 2020. Soon after, StoneMor sent the Union a cleaned-up draft that mostly tracked the ratified Agreement but contained what StoneMor described as a clarification of a wage provision granting employees a salary increase every October 1st. The parties disagreed on whether the pay bump would occur on the just-passed October 1st, or instead was meant to begin on October 1st of the next year. The Union contested the proposed change in the language of the wage provision, and StoneMor responded, "You can file a grievance, if you wish, and we will

3

arbitrate the issue." (J.A. at 177.) Later that month, StoneMor sent another draft Agreement with the same proposed change. The Union did not file a grievance at that time, nor did it file one on October 30th when the maintenance employees' paychecks arrived without the contested salary increase. In November 2020, the Union sent the draft Agreement containing the originally agreed-upon language of the wage provision. The parties finally executed the Agreement containing that original wage provision on December 29, 2020.

On January 5, 2021, seven days after the Agreement was executed, but over ninety days after it had been ratified, the Union filed its grievance over the meaning of the disputed wage provision. Arbitration followed. The parties asked the arbitrator to resolve the dispute and determine if the grievance was timely filed. The arbitrator held that the grievance was timely filed and then found in favor of the Union on the merits.

On timeliness, she reasoned that the contested provision had been unresolved from ratification on October 5, 2020, until execution of the finalized Agreement on December 29, 2020. StoneMor did not include the originally agreed-upon wage provision in any of its cleaned-up drafts after ratification; it was not included again until the Union's November 2020 draft. By the arbitrator's lights, "it was reasonable that the Union would ensure that the [originally agreed-upon] language was incorporated in the [final Agreement] before it filed a grievance[.]" (J.A. at 55.) The arbitrator continued: "Moreover, the Union was not required to file a grievance while the parties were continuing to clarify and negotiate the provisions of the [Agreement] until the [Agreement] was fully executed." (J.A. at 55.) She found that the Agreement was executed on December 29, and that the Union filed its

4

grievance less than 10 days later, on January 5. Thus, the arbitrator held, it was timely.

StoneMor petitioned the District Court to vacate the arbitrator's award under the Federal Arbitration Act, 9 U.S.C. § 10. The Court granted that petition, holding that the award had no basis in the underlying Agreement. The Court reasoned that "[t]he [Agreement] was enforceable as soon as it was ratified by the Union members" on October 5, 2020, and that the grievance provision was triggered by at least October 30, 2020, when the paychecks arrived without a salary increase. (J.A. at 18**; 21**.) The Court said the ruling that the Union was reasonable and within its rights to wait until January to pursue a grievance was contrary to the plain meaning of the Agreement. The Union has now timely appealed.

## II.    DISCUSSION[1]

Under the Federal Arbitration Act, a district court may overturn an arbitrator's award only if the "award was procured

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 185. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(E). "On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error[,]" *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 244 n.8 (3d Cir. 2021) (citation and internal quotation marks omitted), and we "apply the same standard the district court should have applied." *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*, 385 F.3d 809, 815 (3d Cir. 2004). As the party moving to vacate, StoneMor "bears the burden of

by corruption," 9 U.S.C. § 10(a)(1), if the arbitrators were corrupt or guilty of misconduct, *id.* § 10(a)(2)-(3), or if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made[,]" *id.* § 10(a)(4). An arbitrator exceeds her powers if her award fails to "draw[] its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *see Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1130 n.11 (3d Cir. 1972) (finding *Steelworker*'s principles consistent with 9 U.S.C. § 10(a)(4)).

"It's a steep climb to vacate an arbitration award." *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022). Nevertheless, our review is "not toothless," and we will reverse if the arbitrator "rewrites the contract[.]" *Indep. Lab'y Emps.' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 219 (3d Cir. 2021).[2]

Here, the arbitrator did just that. The Agreement, by its terms, became final once "ratified by a majority of the employees[.]" (J.A. at 59.) After that happened on October 5, 2020, the Agreement, including its grievance provision, was binding upon the parties. The Union acknowledges that, as it should, since the pertinent language is crystal clear. (*See* J.A.

---

proof." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 314 (3d Cir. 2021).

[2] Because it garnered a majority vote, Judge Bibas's "concurrence" is, in fact, the majority opinion in *Independent Laboratory Employees' Union, Inc. v. ExxonMobil Research & Engineering Co.* 11 F.4th 210, 211 (3d Cir. 2021).

at 206 ("[The Court:] [Y]ou agree that on October 5th, 2020, the agreement was ratified and it becomes a binding agreement at that point in time; correct?  [Union:]  Yes, your Honor.").)  Despite the clarity of that provision, the arbitrator declared, "It is reasonable that the Union would ensure that the [originally agreed-upon] language was incorporated in the [final Agreement] before it filed a grievance asserting that the Employer violated the [Agreement]."  (J.A. at 55.)  There is, however, no "reasonableness" exception to the grievance procedure in the Agreement.  In fact, the parties explicitly agreed that "time [was] of the essence."  (J.A. at 71.)  The arbitrator's holding was not based on anything in the Agreement.  *See Monongahela*, 946 F.3d at 201 (overturning arbitrator award "[w]here an arbitrator inject[ed] a restriction into a contract to which the [employer] did not agree").  Instead, the arbitrator simply asserted that "the Union was not required to file a grievance while the parties were continuing to clarify and negotiate the provisions of the [Agreement] until the [Agreement] was fully executed."  (J.A. at 55.)  That holding directly contradicts the Agreement's express language setting ratification, and not execution, as the binding date for the Agreement.  *See Southwest Airlines Co. v. Transport Workers*, 912 F.3d 838, 846 (5th Cir. 2019) (overturning an arbitrator's award that set execution as the binding date instead of ratification as required by the collective bargaining agreement).  Thus, the arbitration award "reflects a manifest disregard of the agreement[,]" *Monongahela*, 946 F.3d at 199, and was rightly vacated.

The Union argues that the parties' negotiations after ratification demonstrate that that "the parties had not reached a meeting of the minds … on an essential term of the contract[.]" (Reply Br. at 6.)  But that is the very circumstance covered by

7

the grievance procedure, which was binding upon the parties at ratification. If the Union did not like StoneMor's interpretation of the wage provision, and StoneMor did not relent, the Union could and should have filed a grievance within ten days. It did not, and so its grievance was not timely filed. The arbitrator's decision to the contrary cannot stand because it ignores that the grievance procedure was mandatory at ratification.[3]

## III.   CONCLUSION

For the foregoing reasons we will affirm the judgment of the District Court vacating the arbitrator's award.

---

[3] The Union also argues that each paycheck is a continuing violation which ought to toll the grievance time limit. The Union, however, did not raise this argument at the District Court, accordingly, it is forfeited. *DirectTV Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007). Though the District Court raised the issue sua sponte, it did so in the context of continuing negotiations, not paychecks, so the Union's paychecks argument remains unpreserved.

While an appropriate remedy following a properly vacated arbitrator's award may often be "to remand the case for further arbitration proceedings[,]" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001) (per curiam), here, StoneMor only challenged the District Court's vacatur of the arbitration award but not its failure to remand. Thus, we will not disturb the order vacating the arbitration award without remand.